BENDIX ENGINEERING WORKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24956.   Promulgated July 3, 1931.

*Arthur R. Foss, Esq.*, and *Arnold R. Baar, Esq.*, for the petitioner.

*John D. Kiley, Esq.*, and *L. A. Luce, Esq.*, for the respondent.

1052

OPINION.

MATTHEWS: A careful review of the facts hereinabove set forth leads us to the conclusion that the right to receive royalties under the license agreement to manufacture and sell the device covered by the patents in question was extremely valuable when acquired by the petitioner. The invention was a success from the first year of the use thereof. The device appears to be exceedingly simple. It operates automatically. Between 1914 and 1920 the Bendix drive starter had become established in the automobile industry and the production had grown from a little more than 5,000 units in 1914 to between 85 per cent and 95 per cent of all self-starter production. The automobile industry was growing very rapidly and the future of the invention was bound up with the future of the automobile industry. In 1929 over 5,000,000 devices were manufactured and sold.

The petitioner corporation was organized in December, 1920, to take over the interest of Vincent Bendix in the several patents. He received 99.8 per cent of the total capital stock of the corporation in exchange for the property and rights which he transferred and assigned to the corporation.

The value of patents at any given date is a question of fact which must be determined upon the evidence. There should be taken into consideration the history and volume of the profits produced by the use of the patents, together with the opinion testimony of men experienced in dealings in patents and in the products protected by the patent monopoly. See *Nice Ball Bearing Co.*, 5 B. T. A. 484, 496, and cases cited therein.

The only witness called to testify in this case was W. L. McGrath, who is vice president and chief engineer of the Eclipse Machine Company, the licensee under the license agreement dated January 10, 1914, which company manufactures the Bendix drive starter and pays royalties thereon. He has had wide experience in passing upon the merits of inventions and is thoroughly familiar with the Bendix drive starter. He estimated the value to the petitioner of

the patents in question as of December 16, 1920, subject to the license agreement with the Eclipse Machine Company, to be $1,870,000. He arrived at this figure by taking the sum of $289,000, which was the approximate amount of the royalties received in 1920, and treating that sum as a return of 10 per cent upon an investment of $2,890,000. Since nearly six years of the seventeen-year life of the patents had expired, he took eleven-seventeenths of $2,890,000, which gave him the result of $1,870,000.

Although, looking backward from the vantage point gained from a knowledge of the development of the automobile industry, it may be said that McGrath's valuation was not necessarily excessive, we believe it is too high, in view of the history of the patents up to the date Bendix assigned his rights to the petitioner corporation. McGrath took the amount of the royalties received in 1920, or $289,000, as one of the factors to be used in estimating the worth of the patents. This sum was greatly in excess of the amount received in 1919, which was approximately $185,000, and there was a dropping off in the royalties for the two succeeding years. In 1921 royalties were received in the sum of $168,559.05 and in 1922 they amounted to $210,978.23.

We have found the average remaining life of the patents at December 16, 1920, to be 11.1446 years. We believe the petitioner could have clearly foreseen the receipt from the royalties for that period of approximately $250,000 per year.

After carefully studying and weighing all the evidence submitted, we have reached the conclusion that the petitioner is entitled to annual deductions for exhaustion of its patents based upon a value of $1,500,000 at the date of acquisition and an average life of 11.1446 years.

The statutory net loss for the year 1921 should be determined on the basis of the net income determined by the respondent less the amount of depreciation which is properly allowable for 1921 under this decision, and such net loss should be applied in reduction of the petitioner's income for 1922 and 1923 in accordance with the provisions of section 204 of the Revenue Act of 1921.

*Judgment will be entered under Rule 50.*